DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GIL CAMACHO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-448

[May 18, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Melinda Brown, Acting Circuit Judge; L.T. Case No. 11-12367CF10A.

Eric T. Schwartzreich of Schwartzreich and Associates, P.A., Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

The issue presented for our review is whether the victim's prior sworn testimony from an *Arthur* hearing is admissible when the victim's death rendered her "unavailable" for trial. We find that appellant's direct examination of the victim during the *Arthur* hearing was the functional equivalent of "significant cross-examination." Therefore, the trial court did not err in admitting the *Arthur* hearing testimony. We also find the other issues raised by appellant to be without merit, and thus we affirm appellant's convictions.

The lower court held an *Arthur* hearing[1] to determine appellant's entitlement to pre-trial release. At the hearing, appellant called the victim to testify because the state had not done so. According to the victim, appellant had grabbed her without provocation, beat her, and trapped her in a room. Appellant then struck the victim with a "samurai sword." Appellant allegedly tried to strike her in the head, but she lifted both of

---

[1] *See State v. Arthur*, 390 So. 2d 717 (Fla. 1980).

her arms to protect herself. Eventually, appellant's son took the victim to the hospital, where she was treated for severe damage to her arms. Appellant's reason for attacking her with a sword, according to the victim, was that appellant had already "marked [her] face" and did not want to go to jail again.

Appellant attempted to impeach the victim several times during her testimony. Appellant inquired into the victim's drug and alcohol use. The victim admitted that she had done crack cocaine the night before the incident, but had not used crack cocaine on the day of the incident. Appellant also elicited testimony that the victim had two prior felony convictions. Appellant asked about alleged domestic violence between appellant and the victim, and the victim admitted that when the police had been called it had been the victim, not appellant, who was arrested.

The state then examined the victim and elicited more testimony about the victim's account of the incident. When the state concluded its examination, the trial court told the defense attorney, "Just a few more questions, then I'll permit [defense counsel] to cross-examine." Defense counsel then examined the victim as to the testimony the state had just elicited. This second examination was replete with unobjected-to leading questions.[2] Defense counsel also took this opportunity to confront the

---

[2] "[Defense Attorney]: Prior to being cut you said you were beaten and you had marks on your face, which is why he freaked out?
. . .
[Victim]: He just marked my face, not marks. Just one, he made one mark.
[Defense Attorney]: Where was that mark?
[Victim]: Huh? I don't even remember, because this is what he told me. There is pictures [sic].
. . .
[Defense Attorney]: You were hit in the face; correct?
[Victim]: Yes.
[Defense Attorney]: You would have marks somewhere on your face?
[Victim]: Wasn't there any?
[Defense Attorney]: I don't know. Let me show you a picture.
[The defense attorney then showed the victim a picture of her in the hospital.]
[Defense attorney]: Do you see any marks on your face in that picture?
[Victim]: Okay. That's only one side; right?
[Defense Attorney]: I agree.
[Victim]: Must have been the other side.
[Defense Attorney]: Must have been. Okay. And this is when you were in the hospital so it was relatively right after the incident, correct, within a couple of days, give or take?
[Victim]: Okay.
[Defense Attorney]: You were in the hospital three or four days?

victim with a picture of her face, taken shortly after the incident. Although the victim claimed the appellant had "marked [her] face," her face did not show any signs of injury in the picture.

After the *Arthur* hearing, and before the commencement of the trial, the victim died. The state then moved to admit the victim's prior testimony from the *Arthur* hearing into evidence. The trial court permitted the admission of the victim's prior testimony into evidence over appellant's objection. Appellant was convicted of attempted second-degree murder and false imprisonment. Appellant appeals his convictions.

Whether appellant had a prior opportunity to cross-examine or confront the victim is a question of law which we review de novo. *Petit v. State*, 92 So. 3d 906, 910 (Fla. 4th DCA 2012).

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Amend. VI, U.S. Const. Further, in the seminal case of *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court stated that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. Thus, under the Confrontation Clause, admission of an unavailable declarant's testimonial communications requires that the defendant have a prior opportunity to cross-examine the declarant.

In the present case, the victim gave testimony, or a "testimonial communication," during the hearing, and the victim's death rendered her "unavailable." The remaining question is whether the direct examination of the victim by appellant's counsel during the *Arthur* hearing satisfies the requirement that the accused have a prior opportunity to cross-examine or confront the witness against him.

"[T]he requirement for confrontation is satisfied where the opportunity is exercised, is more than 'de minimis,' and is 'the equivalent of significant cross-examination.'" *State v. Contreras*, 979 So. 2d 896, 909 (Fla. 2008) (quoting *Ohio v. Roberts*, 448 U.S. 56 (1980)).[3] In *Roberts*, the defendant

---

[Victim]: Yes sir."

[3] As the Florida Supreme Court has noted, although the United States Supreme Court "receded from the *Roberts* reliability test in *Crawford* [*v. Washington*, 541 U.S. 36 (2004)]," it cited "*Roberts* with approval for the proposition that prior trial or hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine. The Supreme Court noted that the testimony from

called a witness during a preliminary hearing and attempted to elicit exculpatory testimony from her. The defendant did not ask for the witness to be declared hostile and did not ask permission to cross-examine her. Nevertheless, the Court stated that the questioning took the "form" of a cross-examination because it was "replete with leading questions." *Roberts*, 448 U.S. at 70. Furthermore, the examination "comported with the principal purpose of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Id.* at 71 (citation omitted) (emphasis omitted). Thus, the Court concluded the questioning was "the equivalent of significant cross-examination" regardless of "however state law might formally characterize the questioning." *Id.* at 70-71.

In this case, the victim's *Arthur* hearing testimony had all of the characteristics of a cross-examination despite formally being called a "direct examination." The examination took the "form" of cross-examination. During the hearing, the defense attorney asked numerous unobjected-to leading questions, "the principal tool and hallmark of cross-examination." *See id.* at 70. The examination also was a cross-examination in substance. Appellant was permitted to impeach the victim with her drug use and her prior felony convictions to undermine her credibility. Furthermore, after the state elicited testimony of her account of the incident, appellant was permitted to challenge her assertion that appellant had "marked [her] face" by offering photographic evidence showing that her face showed no signs of injury.

Furthermore, the *Arthur* hearing itself was adversarial in nature. In an *Arthur* hearing, "the state must come forward with a showing that the proof of guilt is evident or the presumption is great." *Arthur*, 390 So. 2d at 720. Such a hearing is unlike, for example, a discovery deposition which "is at odds with the concept of meaningful cross-examination" "because the defendant is usually prohibited from being present, the motivation for the

---

a preliminary hearing was properly admitted in *Roberts* because the defendant had examined the witness at that hearing." *Contreras*, 979 So. 2d at 909 n.5 (citation omitted). Thus, although the reliability standard described in *Roberts* is no longer the applicable Confrontation Clause test, *Roberts* continues to provide guidance as to what constitutes a sufficient prior opportunity to cross-examine a witness. *See id.* As Justice Scalia noted, "Even our recent cases, in their outcomes, hew closely to the traditional line. [*Roberts*] admitted testimony from a preliminary hearing at which the defendant had examined the witness." *Crawford*, 541 U.S. at 58.

4

deposition does not result in the 'equivalent of significant cross-examination,' and the resulting deposition cannot be admitted as substantive evidence at trial." *Contreras*, 979 So. 2d at 910-11. *See also Vilseis v. State*, 117 So. 3d 867 (Fla. 4th DCA 2013). However, in this case, appellant was present, was motivated to undermine the strength of the state's case, and was permitted great latitude when confronting the victim. *Cf. Petit*, 92 So. 3d at 913 (holding that testimony from a bond hearing was admissible because the defendant had a sufficient opportunity to cross-examine the witness); *Thompson v. State*, 995 So. 2d 532, 534 (Fla. 2d DCA 2008) (stating that testimony from a preliminary hearing was admissible because "the defendant was present and represented by counsel who cross-examined the witness").

Appellant argues the *Arthur* hearing did not afford him a full opportunity to cross-examine the victim and, had he known it would be his last opportunity to examine the victim, he would have done so more vigorously. But "*Crawford* does not require similarity of motive in the previous judicial proceeding or mention a 'meaningful' opportunity for cross-examination." *Petit*, 92 So. 3d at 911. Rather, it requires only that testimony from an unavailable witness be tested in the "crucible of cross-examination." *See Crawford*, 541 U.S. at 61.

Although our state law "formally characterize[d]" appellant's examination of the victim as a direct examination, *see Roberts*, 448 U.S. at 71, appellant's examination satisfied the constitutional requirements of confrontation because it was "more than 'de minimis,' and [was] 'the equivalent of significant cross-examination.'" *See Contreras*, 979 So. 2d at 909 (quoting *Roberts*, 448 U.S. at 70). We therefore conclude that, under these circumstances, it did not violate the Confrontation Clause to admit the victim's *Arthur* hearing testimony as substantive evidence at trial.

*Affirmed.*

STEVENSON and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***